IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | Criminal No. CCB-14-170 |
| ROBERT HARRISON | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MOTION TO COMPEL DISCLOSURE OF EVIDENCE
RELATED TO THE GOVERNMENT'S USE OF A CELL SITE SIMULATOR**

Robert Harrison, through his undersigned counsel, C. Justin Brown, hereby moves this Honorable Court to compel the Government to disclose information about its use of a cell site simulator, "Stingray," or other similar device in relation to the search of Robert Harrison and his residence at 3805 Chatham Road in Baltimore, Maryland. The Government, citing a "technology privilege," has to date declined to provide any substantive information about this technology and how it was used. In support of this motion, Defendant states the following:

**I. BACKGROUND FACTS**

The Defendant is charged with Conspiracy to Use Interstate Commerce Facilities in the Commission of Murder-For-Hire, in violation of Title 18 U.S.C. § 1958.

The Government's theory is that Harrison was enlisted by co-defendant Derrick Smith to assist with a fictitious murder-for-hire plot. According to discovery provided by the Government, the plot originated with information provided to law enforcement by a confidential source ("CW1"). CW1 told authorities that Smith was a hit man for hire and, under the supervision of law enforcement, CW1 initiated contact with Smith to propose that Smith commit a fictitious murder.

CW1 worked with an undercover police officer ("UC") to convince Smith to agree to the plot. On February 4, 2014, the UC provided Smith with a cellular telephone, ending in the number 6749. In the weeks leading up to Smith's arrest, CW1 and UC placed multiple phone calls to this number. Some of the calls were answered by individuals other than Smith. The Government theorizes that one of the people who used the phone was Harrison.

As some time prior to the arrest of Smith, the Government attempted to figure out who was using the phone, and where they were using it. According to the AUSA handling the case, a cell site simulator[1] was then employed to pinpoint where the phone was located. Through use of this device, Baltimore City police learned that the phone was located at, precisely, 3805 Chatham Road.

Once police learned of this address, according to an FBI 302 report,[2] police used open-source databases to obtain the names of the residents living at 3805 Chatham Road. The police then cross-referenced those names with information related to Derrick Smith, according to the report, and found multiple connections between Smith and Harrison. Based on this, Harrison was suspected to be an accomplice of Smith.

On March 27, 2014, a team of approximately five Baltimore City police officers and detectives approached Harrison's apartment, where he lived with his girlfriend and several children. The officers now claim that Harrison consented to their entry and search of his apartment. Harrison maintains that he did not consent and they made a forced entry.

---

[1] Counsel believes that the device used was a cell site simulator. It was referred to by the Government in a conversation with undersigned counsel as a "Triggerfish." The most common name used for this device is "Stingray," which is a brand name given by the manufacturer.

[2] The report was prepared by FBI Agent Eric Nye on September 3, 2014 – six months after the date of the arrest – in response to a request by undersigned counsel for more information about the incident.

Once inside the apartment, police conducted a search and found the cellular phone they had been tracking with the cell site simulator. According to a 302 report dated April 3, 2014, the AUSA authorized a warrantless arrest of Harrison. The Government has stated that no contemporaneous Baltimore City Police records of the incident exist. The only documentation of Harrison's purported consent comes in an FBI report prepared on September 16, 2014 – approximately six months after the incident – in response to undersigned counsel's inquiries.

At some point after the arrest, upon speaking to Harrison, officers were able to match Harrison's voice to one of the voices on a controlled call previously made by CW1.  The Government asserts that Harrison made an incriminating statement during that call, which is the basis for the federal criminal charges.

## II. THE INFORMATION SOUGHT

By this Motion Harrison seeks access to information that is material to various suppression issues. Counsel has requested this information from the Government, but the Government has taken the position that information related to the cell site simulator is protected by a "technology privilege." The Government has stated that there were no written documents produced in relation to the use of the device, and it will not disclose the names of the Baltimore City Police officers who operated the device – thereby making it next to impossible for the Defendant to subpoena these individuals for the November 13, 2014, pretrial motions hearing. Specifically, Defendant Harrison seeks the following information:

1. Any and all documents related to the use of a cell site simulator (or similar device) that was used to track telephone number (443) 803-6749, including, but not limited to, any reports describing the investigation, any documents describing what type of device was used, any documents, such as run sheets or time sheets, showing what

officers were operating the device and when they were operating the device, any correspondence between federal agents and local police directing the police as to how the device should be used;

2. The identities of the officers or other personnel operating the device, including all identifying information and addresses that would be required for subpoenaing those officers and other personnel; and

3. Any other reports related to the search of 3805 Chatham Road or the arrest of Harrison that have not already been disclosed.

### III. RELEVANCE OF INFORMATION SOUGHT

The information sought by this Motion is relevant to Harrison's forthcoming suppression hearing. It is also necessary in the sense that Harrison is unable to obtain this information by any other means.

First, use of the cell site simulator led to the discovery of evidence that may be suppressed. Based on the account of events that has been provided to counsel, the cell site simulator was essential to locating the address of the person who was in possession of the phone. After the address had been identified, law enforcement first came up with Harrison's name and developed him as a suspect. Officers then searched Harrison's home and obtained two pieces of evidence: 1) the phone; and 2) they heard Harrison's voice, which would later be matched to the voice on one of the controlled calls. It follows that, if the Court finds that the use of the cell site simulator was unlawful, the evidence found in Harrison's home would be the fruit of the poisonous tree and would be excluded from trial.

The details of how the cell site simulator was used, and how it works, are necessary to determine whether the officers' conduct was unlawful. Harrison argues that use of the device

amounted to searches of his home, cell phone, and person. On one hand, the device, when paired with the phone, amounted to a GPS device that tracked Harrison into his home. *See United States v. Karo*, 468 U.S. 705, 718 (1984) (finding that warrantless use of a beeper to track an object into a home was a violation of the Fourth Amendment). On the other hand, it is very possible that, because of the cell site stimulator's intrusive nature,[3] its use amounted to a search of Harrison's phone, and person, therefore, was unconstitutional. *See Riley v. California*, 134 S. Ct. 2473 (2014) (finding that a warrantless search of a cellular phone during an arrest was unconstitutional).

Finally, because the Government has provided next to no information about the use of the cell site simulator, Harrison has no alternative means of learning how the technology was used in the investigation leading to his arrest.

### IV. CONCLUSION

For the reasons described above, Defendant Harrison respectfully requests that this Court grant this Motion, and compel the Government to produce the information and documents requested herein.

---

[3] Based on information about cell site simulators available from public sources, these devices intrusively send out powerful signals to cellular phones and, essentially, trick the cellular phones into transmitting their locations and identifying information. Thus, the cellular signal is, on command, pulled away from cellular towers that the phone might otherwise use. The phone need not be active when this is done.

Respectfully Submitted,


_____/s/_____
C. Justin Brown
LAW OFFICE OF C. JUSTIN BROWN
231 East Baltimore Street, Suite 1102
Baltimore, Maryland 21202
Tel: (410) 244-5444
Fax: (410) 934-3208
brown@cjbrownlaw.com


**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 10th day of October, 2014, a copy of the foregoing Motion was sent to each of the parties via CM/ECF.


_____/s/_____
C. Justin Brown